Carl E. Zapffe, Esq.
HELD & HINES LLP
622 Third Avenue, Suite 600
New York, NY 10017
718-531-9700 (Phone)
718-444-5768 (Fax)
czapffe@heldhines.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DERICK DOUGLAS,<br><br>     Plaintiff,<br><br>  vs.<br><br>STATE OF NEW JERSEY; COUNTY OF ATLANTIC; NEW JERSEY DEPARTMENT OF CORRECTIONS; ATLANTIC COUNTY JUSTICE FACILITY a/k/a Mays Landing New Jersey Detention Center a/k/a Atlantic County Jail a/k/a Atlantic County Gerald L. Gormley Justice Facility; ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY; MICHAEL R. KELLY; MICHAEL A. FEDORKO; and JOHN AND JANE DOES #1-99,<br><br>     Defendants. | CASE #:_____-cv-_____<br><br>CIVIL ACTION<br><br><br>**AMENDED COMPLAINT WITH JURY DEMAND** |

Derick Douglas (hereinafter "Plaintiff"), by and through their[1] attorneys, Held & Hines LLP, by way of Complaint, hereby makes the following allegations against the State of New Jersey; the County of Atlantic; the New Jersey Department of Corrections; the Atlantic County Justice Facility a/k/a Mays Landing New Jersey Detention Center a/k/a Atlantic County Jail a/k/a Atlantic

_____

1. Plaintiff identifies as transgender, and as such, Plaintiff's preferred pronouns are "they" and "their."

- 1 -

County Gerald L. Gormley Justice Facility; the Atlantic County Department of Public Safety; Michael R. Kelly; Michael A. Fedorko; and John and Jane Doe #1-99 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. Plaintiff commences this action pursuant to 42 U.S.C. §1983 seeking compensatory and punitive damages against all Defendants for violating their constitutional rights while acting under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

2. Between February 17, 2024, and March 1, 2024, Plaintiff was confined to Defendants' custody, control, and care at the Atlantic County Jail, located in Mays Landing, New Jersey. Despite Plaintiff being an at-risk person in custody due to prior incidents of sexual victimization while in custody, their transgender status, and other risk factors that placed Plaintiff at heightened risk of sexual victimization, Defendants assigned Plaintiff to a general population, three-person cell.  Predictably, on or about February 23, 2024, Plaintiff was raped by their cellmate. Plaintiff reported this incident to Defendants, and he was taken to the hospital and interviewed by Defendants' investigators about the sexual assault. Upon Plaintiff's release from the hospital, they were returned to the Atlantic County Jail and assigned to a different general population, three-person cell.  That evening, Plaintiff was raped again by his cellmates.

3. Defendants and their supervisory officials, line officers, and administrative staff personally facilitated these rapes and sexual abuses by being deliberately indifferent to the reasonably foreseeable danger of assigning Plaintiff to a multi-person, general population cell, in failing to exercise reasonable caution in classifying and housing Plaintiff, in making inadequate and/or predictable rounds, and otherwise failing to take reasonable and necessary measures to protect Plaintiff from foreseeable harm, as alleged *infra*.

4.      As a result of the acts and omissions alleged herein, Plaintiff suffered and continues to suffer from significant bodily injuries, as well as psychological and emotional injuries.

5.      Plaintiff also asserts supplemental state law claims of (a) assault and battery, (b) negligent screening, hiring, training, supervision, and retention, (c) negligence, and (d) intentional and negligent infliction of emotional distress.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

7.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

8.      Additionally, this Court has subject matter jurisdiction over this action because, pursuant to 28 U.S.C. § 1332, as detailed below, there is complete diversity by and between all the parties, and the amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.

9.      This Court has supplemental jurisdiction over Plaintiff's claims which arise under New Jersey state law pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over this action because, as detailed below, at least one of the Defendants resides in the State of New Jersey.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) as all Defendants are residents of New Jersey and, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

12.     At all times relevant herein, Plaintiff is a natural person who resides in Binghamton, New York, which is located within Broome County, New York.

13.     At all times relevant herein, Defendant State of New Jersey ("New Jersey") was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of New Jersey's numerous prison and correctional facilities.

14.     At all times relevant herein, Defendant County of Atlantic ("Atlantic County") was and is a municipal corporation, established and existing by virtue of the laws of the State of New Jersey.

15.     At all times relevant herein, Atlantic County was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of Atlantic County's numerous prison and correctional facilities.

16.     At all times relevant herein, Defendant New Jersey Department of Corrections ("Department of Corrections") was and is the government agency responsible for the operation and management of prison facilities within New Jersey.

17.     At all times relevant herein, the Department of Corrections was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of New Jersey's numerous prison and correctional facilities.

18.     At all times relevant herein, the Atlantic County Justice Facility, also known as the Mays Landing New Jersey Detention Center, the Atlantic County Jail, and the Atlantic County Gerald L. Gormley Justice Facility ("Atlantic County Jail") is an adult detention facility located in Mays Landing, New Jersey.

19.     At all times relevant herein, the Atlantic County Jail was and is responsible for the safety and well-being of individuals who are within its legal custody, care, and/or control.

20.    At all times relevant herein, Defendant Atlantic County Department of Public Safety ("Department of Public Safety") was and is the government agency responsible for the operation and management of the Atlantic County Jail.

21.    At all times relevant herein, the Department of Public Safety was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Atlantic County Jail.

22.    At all times relevant herein, Defendant Michael R. Kelly ("Michael Kelly") was and is the Warden of the Atlantic County Jail.

23.    At all times relevant herein, Michael Kelly was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Atlantic County Jail.

24.    At all times relevant herein, Defendant Michael A. Fedorko ("Michael Fedorko") was and is the Department Head of the Department of Public Safety.

25.    At all times relevant herein, Michael Fedorko was and is responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Atlantic County Jail.

26.    At all times relevant herein, Defendants John and Jane Does #1-99 are additional individuals who were and are responsible for the safety and well-being of individuals who are within the legal custody, care, and/or control of the Atlantic County Jail, but whose names and/or titles are not yet known to Plaintiff.

27.    At all times relevant herein, New Jersey owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

28.     At all times relevant herein, Atlantic County owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

29.     At all times relevant herein, Department of Corrections owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

30.     At all times relevant herein, Atlantic County Jail itself owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

31.     At all times relevant herein, Department of Public Safety owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

32.     At all times relevant herein, Michael Kelly owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

33.     At all times relevant herein, Michael Fedorko owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

34.     At all times relevant herein, John and Jane Does #1-99 owned, operated, maintained, managed, directed, supervised, and/or controlled the Atlantic County Jail, as well as the inmates confined thereto and the staff employed thereat.

**STATEMENT OF FACTS**

35.     On or about February 17, 2024, Plaintiff was incarcerated at the Atlantic County Jail.

36.     During Plaintiff's intake at the Atlantic County Jail, Plaintiff reported that they identify as transgender.

37.     During Plaintiff's intake at the Atlantic County Jail, Plaintiff reported that they were sexually assaulted at the detention center where Plaintiff was previously incarcerated.

38.     During Plaintiff's intake at the Atlantic County Jail, Plaintiff reported that, to the best of Plaintiff's knowledge and understanding, the aforementioned sexual assault occurred because Plaintiff identifies as transgender.

39.     During Plaintiff's intake at the Atlantic County Jail, Plaintiff reported that, due to Plaintiff's identifying as transgender and the recent aforementioned sexual assault, Plaintiff was concerned for their safety at the Atlantic County Jail.

40.     Shortly after Plaintiff's arrival at the Atlantic County Jail, Plaintiff also reported being transgender and the aforementioned sexual assault to a psychiatrist who worked in and/or for the Atlantic County Jail.

41.     Shortly after Plaintiff's arrival at the Atlantic County Jail, and due to identifying as transgender and the aforementioned sexual assault, Plaintiff also expressed concern for their safety to a psychiatrist who worked in and/or for the Atlantic County Jail.

42.     Due to Plaintiff's concerns, Plaintiff made a reasonable request to be placed in protective custody and/or to receive other reasonable housing accommodations.

43.    Plaintiff's request to be placed in protective custody and/or to receive other reasonable housing accommodations was denied by Defendants and/or their agents, servants, or employees.

44.    Instead, security personnel assured Plaintiff that they would be safe from any sexual assault and/or abuse within the confines of the Atlantic County Jail.

45.    Defendants and/or their agents, servants, or employees had actual notice of the high likelihood that Plaintiff would be subject to sexual assaults and abuse within the confines of the Atlantic County Jail.

46.    Defendants and/or their agents, servants, or employees had constructive notice of the high likelihood that Plaintiff would be subject to sexual assaults and abuse within the confines of the Atlantic County Jail.

47.    Defendants assigned Plaintiff to a three-person, all-male cell within the all-male general population unit.

48.    On or about February 23, 2024, which was within Plaintiff's first week at the Atlantic County Jail, Plaintiff was raped and sexually assaulted by one of Plaintiff's cellmates during a period of free movement.

49.    The rape and sexual assault on Plaintiff by one of Plaintiff's cellmates included both forced anal sex and oral sex.

50.    Plaintiff's cell door was open at the time of the aforementioned rape and sexual assault.

51.    The Correction Officer Station was located approximately twenty (20) feet from Plaintiff's cell.

52.    Nevertheless, despite Plaintiff's cell door being open at the time of the rape and sexual assault, and despite the Correction Officer Station being located only approximately twenty (20) feet away, no correction officer or other employee of the Atlantic County Jail came to assist Plaintiff and/or halt the rape and sexual assault.

53.    Plaintiff reported the incident to a correction officer shortly after the incident occurred.

54.    Upon information and belief, the correction officer to whom Plaintiff reported the incident advised his/her superiors of the rape and sexual assault on Plaintiff.

55.    Plaintiff was then taken to the hospital for a rape kit and then sent back to the Atlantic County Jail.

56.    Upon information and belief, the rape kit recovered deoxyribonucleic acid ("DNA") from Plaintiff's cellmate.

57.    Upon Plaintiff's return to the Atlantic County Jail, Plaintiff again talked to a psychiatrist who worked in and/or for the Atlantic County Jail.

58.    Plaintiff reported the aforementioned rape and sexual assault to the psychiatrist, as well as Plaintiffs concern for their safety.

59.    However, despite the concerns that Plaintiff had expressed to numerous individuals, and despite the fact that Plaintiff had been raped and sexually assaulted within twenty-four hours of their arrival, Defendants recklessly placed Plaintiff back into a different three-person, all-male cell within the all-male general population unit

60.    Plaintiff voiced their concerns and renewed their request to be placed in protective custody and/or to receive reasonable housing accommodations.

61. Plaintiff's requests were refused, and security personnel once again assured Plaintiff that they would be safe from any sexual assault and/or abuse.

62. During Plaintiff's first night in the new cell, shortly after the cell door was locked for the evening, Plaintiff was sexually assaulted again.

63. Specifically, one of Plaintiff's cellmates raped and sexually assaulted Plaintiff.

64. This rape and sexual assault included both forced anal sex and oral sex, and culminated when Plaintiff's cellmate ejaculated on or in Plaintiff.

65. Then, immediately after Plaintiff's cellmate concluded his rape and sexual assault on Plaintiff, one of Plaintiff's other cellmates raped and sexually assaulted Plaintiff.

66. This rape and sexual assault included both forced anal sex, and culminated when Plaintiff's cellmate ejaculated on or in Plaintiff.

67. The following morning, Plaintiff reported both incidents by passing a note to a correction officer.

68. Plaintiff was taken to the infirmary, and upon information and belief, various staff members of the infirmary spoke with the correction officer's sergeant, lieutenant, and/or supervisor about the repeated rapes and sexual assaults on Plaintiff.

69. Plaintiff was taken back to the hospital for another rape kit, and upon information and belief, the rape kit recovered DNA from both of Plaintiff's cellmates.

70. When Plaintiff returned to the Atlantic County Jail, Plaintiff was housed alone in the intake unit.

71. At this time, however, Defendants and/or their employees, agents, or servants denied Plaintiff's multiple requests to speak to a psychiatrist about repeatedly being raped and sexually assaulted, and otherwise retaliated against Plaintiff.

72. Plaintiff was released from the Atlantic County Jail shortly after returning from the hospital.

73. As a result of the aforementioned acts of sexual assaults and abuse, Plaintiff sustained physical, psychological, and emotional injuries.

74. At all times alleged herein, Defendants owed a duty of care to Plaintiff in providing and placing them in a safe facility, to protect them from foreseeable harm, to monitor said facility in order to prevent sexual abuse thereat, and to provide for their safety, security, care, and well-being.

75. At all times alleged herein, each Defendant had a non-delegable duty to use reasonable care in their supervision and monitoring of the jails at which they detained individuals, to the individuals themselves; to develop and implement policies, practices, procedures, guidelines, directives, and training to prevent sexual assault and abuse of individuals confined to their jails; to fully and faithfully investigate allegations of sexual assault and abuse; to stop sexual assaults and abusive behavior; to prevent future sexual assault and abusive behavior; to train their employees, agents, and servants in the prevention of sexual assaults and sexual abuse; and in avoiding the placement of inmates, like Plaintiff, in a trap-like conditions.

76. Upon information and belief, Defendants, their agents, servants, and employees, knew or should have known about the dangerous propensities of their inmates to sexually assault and abuse other inmates, especially Plaintiff.

77. By reason of the foregoing, Defendants were and are liable for the acts and omissions that occurred at their facility, the Atlantic County Jail, which left Plaintiff with severe and permanent physical, psychological, and emotional injuries.

**FIRST COUNT**
**VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983**

78.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

79.     As alleged above, Defendants, acting under the color of law, violated Plaintiff's clearly established constitutional rights in that they failed to intervene on Plaintiff's behalf in each of the instances alleged herein despite having time and opportunity to do so.

80.     As set forth above, Defendants acted with deliberate indifference to Plaintiff's safety and security by allowing sexual predators to be and remain assigned to Plaintiff's cell; by allowing sexual predators to have unfettered access to Plaintiff; by failing to train staff to recognize the signs of coercion and sexual abuse; by failing to train staff to recognize and report patterns of certain inmates that are engaging in sexually abusive tactics; by failing to recognize and appreciate the specific risks that transgender inmates and sexual abuse victims face in jail and to implement policies and practices to improve their safety; by failing to identify a systemic problem of transgender inmates being sexually victimized in their facilities; by allowing a custom and practice that permitted mandatory reporters to avoid reporting allegations of sexual abuse without consequences; by failing to timely implement policies consistent with PREA standards; by failing to screen employees through background checks and other methods; by permitting their supervisory officials and staff to operate in the manner alleged herein; by failing to monitor (through cameras or otherwise) known at-risk areas; by failing to implement meaningful consequences for officers and staff who fail to report suspected and/or witnessed rape and sexual abuse; by failing to take reasonable measures to ensure the safety and security of their transgender prisoner population; by failing to implement adequate and effective training, supervision and

monitoring policies; and in being otherwise deliberately indifferent in their acts and omissions alleged herein.

81.    By their policies, practices, acts, and omissions, Defendants caused Plaintiff to be subjected to forcible touching, sexual assault, rape and be otherwise sexually victimized, in violation of their due process rights under the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

82.    The consistent ignoring by Defendants and their supervisory officials and staff of persistent and widespread pattern of sexual abuse, rape, and assaults, demonstrates a custom and practice of actual, or at least constructive, acquiescence to inmate-on-inmate sexual victimization in their jails.

83.    Plaintiff's assailants' abusive conduct towards Plaintiff, though it occurred within a cell, was hardly private or secluded and should have been readily apparent to Defendants, their agents, servants, and employees, as (a) the cell was located in close proximity to the officers' station, (b) supervisors and staff were able and required to walk by as they pleased, (c) supervisors and staff were able to hear what was happening in the cell, (d) supervisors and staff were able to see that another inmate improperly entered Plaintiff's cell, and (e) supervisors and staff were aware or should have been aware that inmates were congregating around Plaintiff's cell, lingering there, and/or spending too much time in Plaintiff's cell.

84.    Defendants have failed to employ obvious measures to reduce the risk of rape and sexual abuse of inmates, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras, exit interviews of inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials and staff.

85. Defendants have failed to train correction officers, mental health staff, and investigators to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

86. Pursuant to Defendants' policy and practice, inmates who report rape and sexual abuse are not protected from retaliation.

87. Defendants do not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins, if at all. Regardless of what an investigation reveals, the subjects are rarely disciplined, and inmates are rarely informed of the outcome.

88. Defendants treat inmates as adversaries rather than allies. In the case of Plaintiff, for example, Defendants failed to document or investigate allegations made to officers and staff.

89. The failures and refusals by Defendants to hold their officers and staff accountable for inmate-on-inmate sexual violence is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly dozens of others.

90. The pattern of unchecked, inmate-on-inmate sexual abuse and the persistent failure or refusal of Defendants to adequately supervise these persons and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuses claimed by the plaintiff.

91. The foregoing customs, policies, usages, practices, procedures and rules of Defendants constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

92.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

93.    As set forth above, Defendants failed to protect Plaintiff from known and foreseeable harm.

94.    As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

95.    As set forth above, Defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

96.    Due to Defendants' practices and policies aforesaid, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

97.    Furthermore, Defendants were at all times alleged herein municipal policymakers.

98.    Defendants were at all times alleged herein charged with drafting, implementing, and promulgating policies and procedures in and for the Atlantic County Jail.

99.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the active supervision of housing units and the inmates confined therein.

100.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the direct supervision of housing units and the inmates confined therein.

101.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct supervisory tours at no less than thirty (30) minute intervals.

102. Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with the Prison Rape Elimination Act.

103. Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with minimizing sexual victimization of inmates by other inmates.

104. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that housing unit officers and supervisors are to conduct supervisory tours such that these officers and supervisors were untrained and did not know what their lawful responsibilities were in the given situation.

105. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with the Prison Rape Elimination Act.

106. Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with minimizing sexual victimization of inmates by other inmates.

107. Any training provided to officers and supervisory staff by Defendants, as alleged herein, was not sufficient to meet minimum standards and was so deficient that officers and supervisory staff would not be able to articulate procedures.

108. Defendants' widespread practice of not actively supervising their housing units and not conducting supervisory tours every thirty (30) minutes is so permanent and well-settled as to

constitute an official policy, custom, or usage.

109. Defendants' widespread practice of failing to adequately train, retrain and supervise housing unit officers is so permanent and well-settled as to constitute an official policy, custom, or usage.

110. Had Defendants' officers and supervisory staff, including but not limited to the Jane and John Doe Defendants, been adequately trained and supervised in all matters of supervision and rounds necessary to perform their daily job duties and functions, the subject incidents would have been avoided. Thus, this long-standing failure and/or refusal to supervise and train the corrections officers and supervisory staff under its/their control, as alleged herein, is now so institutionalized as to constitute a policy or custom of said defendants which caused or contributed to the subject incidents.

111. The failures and refusals by Defendants to hold their officers and supervisory staff accountable is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly countless other inmates.

112. Through promotions and other financial and status incentives, Defendants have the power to reward officers and supervisory staff who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. Defendants' acts and omissions have created and maintained the perception that supervisors, officers and staff who turn a blind eye towards failing to inadequate supervision and sexual harassment, intimidation, abuse and rape, and fail to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

113. As a direct and proximate result of the Defendants, their agents, servants, and employees', acts, omissions, and failures, Plaintiff suffered the consequences and damages aforesaid.

114. As a result of the foregoing, Plaintiff suffered and continues to suffer severe physical injury pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

115. As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to 42 U.S.C. §1983.

**PENDANT STATE CLAIMS**

116. Despite the fact that notices of claim are not required for injuries arising from the commission of sexual assault, *N.J.S.A.* 59:80-3(b), a Notice of Claim, setting forth the time, place, and manner of the incident and the injuries sustained by Plaintiff, was duly filed with Defendants on or about May 1, 2024.

117. More than six (6) months have elapsed since Plaintiff served their Notice of Claim and Defendants have neglected and refused to make an adjustment thereof.

118. This action has been commenced within two years of all of the incidents upon which it is based.

**FIRST COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY
NEGLIGENCE**

119. Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

120. At all times alleged herein, Defendants, their agents, servants, and employees, operated Atlantic County Jail.

121. At all times alleged herein, Defendants, their agents, servants, and employees, maintained the Atlantic County Jail.

- 18 -

122.    At all times alleged herein, Defendants, their agents, servants, and employees, supervised the Atlantic County Jail.

123.    At all times alleged herein, Defendants, their agents, servants, and employees, controlled the Atlantic County Jail.

124.    At all times alleged herein, Defendants, their agents, servants, and employees, managed the Atlantic County Jail.

125.    Defendants each owed a duty of care to keep all individuals in their custody and care, including but not limited to Plaintiff, safe from sexual assault and abuse by other inmates under their supervision and control.

126.    Defendants each owed a duty of care to keep all individuals in their custody and care, including Plaintiff, safe from sexual assault and abuse on its premises.

127.    Defendants each had a duty to supervise its facilities, including all of Plaintiff's assigned housing units.

128.    Each Defendant, their agents, servants, and employees, had a duty to supervise inmates in an effort to prevent and stop physical and sexual assault and abuse amongst inmates.

129.    Each Defendant, their agents, servants, and employees, had a duty to ensure that inmates were provided with safe and appropriate housing assignments in an effort to prevent and stop physical and sexual assault and abuse amongst inmates.

130.    At all times alleged herein, Defendants, their agents, servants, and employees, breached their aforesaid duties in a negligent, reckless, and careless manner.

131.    Defendants, their agents, servants, and employees, knew or in the exercise of reasonable care should have known that the facility and housing units in which Plaintiff was

placed, was not safe and that it was reasonably foreseeable that an incarcerated individual, such as Plaintiff, would be sexually assaulted, and/or abused.

132.    At all times alleged herein, Defendants, their agents, servants, and employees, knew or in the exercise of reasonable care should have known that Plaintiff's sexual assailants had a propensity for the conduct which caused injury to Plaintiff, particularly their propensity to physically and sexually assault and abuse other inmates.

133.    At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that Plaintiff's sexual assailants would commit acts of physical and sexual assault and abuse on other inmates and Plaintiff in particular.

134.    At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that given Plaintiff's transgender status, there was a dangerous and high risk that Plaintiff would become a victim of acts of physical and sexual abuse.

135.    At all times alleged herein, it was reasonably foreseeable to Defendants, their agents, servants, and employees, that if Plaintiff was placed in protective custody or given reasonable housing accommodations, Plaintiff would not have been subject to physical and sexual assault and abuse.

136.    Despite having actual or constructive notice, Defendants, provided and permitted Plaintiff's sexual assailants to have unfettered and unsupervised access to Plaintiff, and gave them the opportunity to commit the foreseeable acts of sexual abuse and assault aforesaid.

137.    Further, upon information and belief, at all times alleged herein, Defendants knew or in the exercise of reasonable care should have known, of the chronic flaws and deficiencies at their facilities that placed Plaintiff, and other men and women in their custody and control, at substantial risk of physical and sexual abuse (*e.g.*, substandard safety and security of individuals

- 20 -

in custody, inadequate training and supervision of staff, poor administrative oversight, faithless and ineffective investigations into reported instances of sexual abuse, and/or refer substantiated allegations of sexual abuse to the police and/or district attorney's office thereby letting abusive conduct continue and emboldening the perpetrators, etc.) and yet failed to address same in any reasonable manner consistent with its duties to the individuals confined to Defendants' custody, control, and care.

138.    As a result of the negligent, reckless, and careless acts and omissions of Defendants, their agents, servants and employees in the instances aforesaid, they breached their duty of care to Plaintiff and caused Plaintiff to be sexually assaulted and abused.

139.    As a result of the negligent acts and omissions of Defendants, their agents, servants, and employees, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

140.    By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages in such an amount that a finder of fact would find fair, just, and equitable.

## SECOND COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY DOCTRINE OF *RESPONDEAT SUPERIOR*

141.    Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

142.    Under the doctrine of *respondeat superior*, an employer will be held vicariously liable for the negligence of an employee causing injuries to third parties, if at the time of the occurrence, the employee(s) was acting within the scope of his or her employment.

143.    In the matter at hand, a master-servant relationship existed between the respective Defendants and the employees who committed the aforementioned tortious acts and/or omissions.

144.    The aforementioned tortious acts and/or omissions occurred within the scope of employment as between the respective Defendant and their agents, servants, and/or employees.

145.    As a result of the aforementioned tortious acts and/or omissions of Defendants' agents, servants, and employees, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

146.    By reason of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages in such an amount that a finder of fact would find fair, just, and equitable.

### THIRD COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION OF EMPLOYEES

147.    Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

148.    Defendants were negligent in hiring, training, retaining, and supervising their personnel, including those charged with classifying Plaintiff and assigning and supervising Plaintiff's housing unit and the inmates in their custody and care, as these individuals were careless, unskillful, negligent, and reckless in discharging their day-to-day responsibilities, and failed to possess the requisite knowledge and skill to ensure the safety of prisoners under their charge.

149.    It was reasonably foreseeable to Defendants that given their agents, servants, and employees careless, unskillful, negligent, and reckless behavior, Plaintiff had a dangerous and high likelihood of being sexually assaulted and abused, yet Defendants failed to train their staff to recognize and prevent physical and sexual abuse; failed to supervise; failed to monitor the interactions between inmates; failed to implement policies and procedures to mitigate sexual

assault and abuse by inmates; and failed to faithfully investigate allegations of physical and sexual abuse.

150.   As a direct and proximate result of the negligent hiring, supervision, and retention of Defendants, Plaintiff was sexually assaulted and abused.

151.   As a direct and proximate result of the negligent hiring, supervision, and retention of Defendants and their employees, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

152.   By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages in such an amount that a finder of fact would find fair, just, and equitable.

## FOURTH COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

153.   Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

154.   Defendants, their agents, servants, and/or employees, knew or reasonably should have known that their aforesaid failures would and did proximately result in physical and emotional distress to Plaintiff.

155.   Defendants, their agents, servants, and/or employees, knew or reasonably should have known that the sexual assault and abuse would and did proximately result in physical and emotional distress to Plaintiff.

156.   Defendants, their agents, servants, and/or employees, had the knowledge, power, ability, authority, and duty to intervene with and/or stop the improper conduct that resulted in

Plaintiff being sexually abused and assaulted by multiple inmates on each occasion Plaintiff was sexually assaulted and abused.

157. Despite said knowledge, power, ability, authority, and duty to intervene, Defendants, their agents, servants, and/or employees, negligently failed to act, stop, prevent and/or prohibit the improper conduct that resulted in the physical and sexual assault and abuse of Plaintiff.

158. By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages against Defendants in such amount that a finder of fact would find fair, just, and equitable.

159. By reason of the foregoing, Plaintiff has been damaged in a substantial sum of money, said sum to be determined by a jury.

## FIFTH COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

160. Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

161. Defendants, their agents, servants, and/or employees, knew or reasonably should have known that their aforesaid failures would and did proximately result in physical and emotional distress to Plaintiff.

162. Defendants, their agents, servants, and/or employees, knew or reasonably should have known that the sexual assault and abuse would and did proximately result in physical and emotional distress to Plaintiff.

163. Defendants, their agents, servants, and/or employees, had the knowledge, power, ability, authority, and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually abused and assaulted by multiple inmates on each occasion Plaintiff was sexually assaulted and abused.

164. Despite said knowledge, power, ability, authority, and duty to intervene, Defendants, their agents, servants, and/or employees, negligently failed to act, stop, prevent and/or prohibit the improper conduct that resulted in the physical and sexual assault and abuse of Plaintiff.

165. Defendants' conduct in this regard was intentional and outrageous.

166. Defendants' conduct in this regard was the proximate cause of Plaintiff's injuries as set forth herein.

167. Plaintiff has suffered severe distress as a result of Defendants' acts and omissions as set forth herein.

168. By reason of the foregoing, Plaintiff is entitled to an award of compensatory damages against Defendants in such amount that a finder of fact would find fair, just, and equitable.

169. By reason of the foregoing, Plaintiff is entitled to an award of punitive damages against Defendants in such amount that a finder of fact would find fair, just, and equitable.

170. By reason of the foregoing, Plaintiff has been damaged in a substantial sum of money, said sum to be determined by a jury.

**SIXTH COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY**
**VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT, *N.J.S.A.* 10:6-1, *et seq.***

171. Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

172. As alleged above, Defendants, acting under the color of law, violated Plaintiff's clearly established constitutional rights in that they failed to intervene on Plaintiff's behalf in each of the instances alleged herein despite having time and opportunity to do so.

173. As set forth above, Defendants acted with deliberate indifference to Plaintiff's safety and security by allowing sexual predators to be and remain assigned to Plaintiff's cell; by allowing sexual predators to have unfettered access to Plaintiff; by failing to train staff to recognize

the signs of coercion and sexual abuse; by failing to train staff to recognize and report patterns of certain inmates that are engaging in sexually abusive tactics; by failing to recognize and appreciate the specific risks that transgender inmates and sexual abuse victims face in jail and to implement policies and practices to improve their safety; by failing to identify a systemic problem of transgender inmates being sexually victimized in their facilities; by allowing a custom and practice that permitted mandatory reporters to avoid reporting allegations of sexual abuse without consequences; by failing to timely implement policies consistent with PREA standards; by failing to screen employees through background checks and other methods; by permitting their supervisory officials and staff to operate in the manner alleged herein; by failing to monitor (through cameras or otherwise) known at-risk areas; by failing to implement meaningful consequences for officers and staff who fail to report suspected and/or witnessed rape and sexual abuse; by failing to take reasonable measures to ensure the safety and security of their transgender prisoner population; by failing to implement adequate and effective training, supervision and monitoring policies; and in being otherwise deliberately indifferent in their acts and omissions alleged herein.

174.    By their policies, practices, acts, and omissions, Defendants caused Plaintiff to be subjected to forcible touching, sexual assault, rape and be otherwise sexually victimized, in violation of their due process rights under the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

175.    The consistent ignoring by Defendants and their supervisory officials and staff of persistent and widespread pattern of sexual abuse, rape, and assaults, demonstrates a custom and practice of actual, or at least constructive, acquiescence to inmate-on-inmate sexual victimization in their jails.

176. Plaintiff's assailants' abusive conduct towards Plaintiff, though it occurred within a cell, was hardly private or secluded and should have been readily apparent to Defendants, their agents, servants, and employees, as (a) the cell was located in close proximity to the officers' station, (b) supervisors and staff were able and required to walk by as they pleased, (c) supervisors and staff were able to hear what was happening in the cell, (d) supervisors and staff were able to see that another inmate improperly entered Plaintiff's cell, and (e) supervisors and staff were aware or should have been aware that inmates were congregating around Plaintiff's cell, lingering there, and/or spending too much time in Plaintiff's cell.

177. Defendants have failed to employ obvious measures to reduce the risk of rape and sexual abuse of inmates, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras, exit interviews of inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials and staff.

178. Defendants have failed to train correction officers, mental health staff, and investigators to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

179. Pursuant to Defendants' policy and practice, inmates who report rape and sexual abuse are not protected from retaliation.

180. Defendants do not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins, if at all. Regardless of what an investigation reveals, the subjects are rarely disciplined, and inmates are rarely informed of the outcome.

181. Defendants treat inmates as adversaries rather than allies. In the case of Plaintiff, for example, Defendants failed to document or investigate allegations made to officers and staff.

182. The failures and refusals by Defendants to hold their officers and staff accountable for inmate-on-inmate sexual violence is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly dozens of others.

183. The pattern of unchecked, inmate-on-inmate sexual abuse and the persistent failure or refusal of Defendants to adequately supervise these persons and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuses claimed by the plaintiff.

184. The foregoing customs, policies, usages, practices, procedures and rules of Defendants constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

185. The foregoing customs, policies, usages, practices, procedures and rules of Defendants were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

186. As set forth above, Defendants failed to protect Plaintiff from known and foreseeable harm.

187. As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

188. As set forth above, Defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

189.   Due to Defendants' practices and policies aforesaid, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

190.   Furthermore, Defendants were at all times alleged herein municipal policymakers.

191.   Defendants were at all times alleged herein charged with drafting, implementing, and promulgating policies and procedures in and for the Atlantic County Jail.

192.   Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the active supervision of housing units and the inmates confined therein.

193.   Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the direct supervision of housing units and the inmates confined therein.

194.   Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct supervisory tours at no less than thirty (30) minute intervals.

195.   Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with the Prison Rape Elimination Act.

196.   Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with minimizing sexual victimization of inmates by other inmates.

197.   Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that housing unit officers and supervisors are to conduct supervisory tours such that these officers and supervisors were

untrained and did not know what their lawful responsibilities were in the given situation.

198.    Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with the Prison Rape Elimination Act.

199.    Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with minimizing sexual victimization of inmates by other inmates.

200.    Any training provided to officers and supervisory staff by Defendants, as alleged herein, was not sufficient to meet minimum standards and was so deficient that officers and supervisory staff would not be able to articulate procedures.

201.    Defendants' widespread practice of not actively supervising their housing units and not conducting supervisory tours every thirty (30) minutes is so permanent and well-settled as to constitute an official policy, custom, or usage.

202.    Defendants' widespread practice of failing to adequately train, retrain and supervise housing unit officers is so permanent and well-settled as to constitute an official policy, custom, or usage.

203.    Had Defendants' officers and supervisory staff, including but not limited to the Jane and John Doe Defendants, been adequately trained and supervised in all matters of supervision and rounds necessary to perform their daily job duties and functions, the subject incidents would have been avoided. Thus, this long-standing failure and/or refusal to supervise and train the corrections officers and supervisory staff under its/their control, as alleged herein, is now so

institutionalized as to constitute a policy or custom of said defendants which caused or contributed to the subject incidents.

204.    The failures and refusals by Defendants to hold their officers and supervisory staff accountable is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly countless other inmates.

205.    Through promotions and other financial and status incentives, Defendants have the power to reward officers and supervisory staff who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. Defendants' acts and omissions have created and maintained the perception that supervisors, officers and staff who turn a blind eye towards failing to inadequate supervision and sexual harassment, intimidation, abuse and rape, and fail to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

206.    Defendants have previously agreed, via a Settlement Agreement and Release filed on June 29, 2021, in the Superior Court of New Jersey, Mercer County, in a matter captioned *Sonia Doe (a pseudonym) vs. New Jersey Department of Corrections, et al.*, docketed under docket number MER-L-1586-19, to, *inter alia*, house all inmates in line with their gender identity, rather than their sex assigned at birth; and to grant procedural protections for inmates regarding such housing decisions, including a right to participate in housing reviews, a right to challenge housing decisions, and a right to request a written record of the decision-making determinations.

207.    The foregoing *Sonia Doe* Settlement Agreement and Release evidences that Defendants knew, or should have known, that the improper housing of individuals who identify as transgender was and is a systematic problem within various New Jersey correctional facilities, including and especially the Atlantic County Jail.

208.   Defendants failed to adhere to any of the procedural protections to which they agreed as part of the *Sonia Doe* Settlement Agreement and Release, despite their actual and/or constructive knowledge that the improper housing of individuals who identify as transgender was and is a systematic problem within various New Jersey correctional facilities, including and especially the Atlantic County Jail.

209.   As a direct and proximate result of the Defendants, their agents, servants, and employees', acts, omissions, and failures, Plaintiff suffered the consequences and damages aforesaid.

210.   As a result of the foregoing, Plaintiff suffered and continues to suffer severe physical injury pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

211.   As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements pursuant to the New Jersey Civil Rights Act.

### SEVENTH COUNT UNDER THE LAWS OF THE STATE OF NEW JERSEY VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, *N.J.S.A.* 10:5-1, *et al.*

212.   Plaintiff repeats and realleges each and every paragraph contained above with the same force and effect as if all such paragraphs were fully set forth herein.

213.   As alleged above, Defendants, acting under the color of law, violated Plaintiff's clearly established constitutional rights in that they failed to intervene on Plaintiff's behalf in each of the instances alleged herein despite having time and opportunity to do so.

214.   As set forth above, Defendants acted with deliberate indifference to Plaintiff's safety and security by allowing sexual predators to be and remain assigned to Plaintiff's cell; by

allowing sexual predators to have unfettered access to Plaintiff; by failing to train staff to recognize the signs of coercion and sexual abuse; by failing to train staff to recognize and report patterns of certain inmates that are engaging in sexually abusive tactics; by failing to recognize and appreciate the specific risks that transgender inmates and sexual abuse victims face in jail and to implement policies and practices to improve their safety; by failing to identify a systemic problem of transgender inmates being sexually victimized in their facilities; by allowing a custom and practice that permitted mandatory reporters to avoid reporting allegations of sexual abuse without consequences; by failing to timely implement policies consistent with PREA standards; by failing to screen employees through background checks and other methods; by permitting their supervisory officials and staff to operate in the manner alleged herein; by failing to monitor (through cameras or otherwise) known at-risk areas; by failing to implement meaningful consequences for officers and staff who fail to report suspected and/or witnessed rape and sexual abuse; by failing to take reasonable measures to ensure the safety and security of their transgender prisoner population; by failing to implement adequate and effective training, supervision and monitoring policies; and in being otherwise deliberately indifferent in their acts and omissions alleged herein.

215.    By their policies, practices, acts, and omissions, Defendants caused Plaintiff to be subjected to forcible touching, sexual assault, rape and be otherwise sexually victimized, in violation of their due process rights under the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

216.    The consistent ignoring by Defendants and their supervisory officials and staff of persistent and widespread pattern of sexual abuse, rape, and assaults, demonstrates a custom and practice of actual, or at least constructive, acquiescence to inmate-on-inmate sexual victimization

in their jails.

217.   Plaintiff's assailants' abusive conduct towards Plaintiff, though it occurred within a cell, was hardly private or secluded and should have been readily apparent to Defendants, their agents, servants, and employees, as (a) the cell was located in close proximity to the officers' station, (b) supervisors and staff were able and required to walk by as they pleased, (c) supervisors and staff were able to hear what was happening in the cell, (d) supervisors and staff were able to see that another inmate improperly entered Plaintiff's cell, and (e) supervisors and staff were aware or should have been aware that inmates were congregating around Plaintiff's cell, lingering there, and/or spending too much time in Plaintiff's cell.

218.   Defendants have failed to employ obvious measures to reduce the risk of rape and sexual abuse of inmates, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras, exit interviews of inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials and staff.

219.   Defendants have failed to train correction officers, mental health staff, and investigators to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

220.   Pursuant to Defendants' policy and practice, inmates who report rape and sexual abuse are not protected from retaliation.

221.   Defendants do not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins, if at all. Regardless of what an investigation reveals, the subjects are rarely disciplined, and inmates are rarely informed

of the outcome.

222.    Defendants treat inmates as adversaries rather than allies. In the case of Plaintiff, for example, Defendants failed to document or investigate allegations made to officers and staff.

223.    The failures and refusals by Defendants to hold their officers and staff accountable for inmate-on-inmate sexual violence is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly dozens of others.

224.    The pattern of unchecked, inmate-on-inmate sexual abuse and the persistent failure or refusal of Defendants to adequately supervise these persons and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuses claimed by the plaintiff.

225.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

226.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

227.    As set forth above, Defendants failed to protect Plaintiff from known and foreseeable harm.

228.    As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

229.    As set forth above, Defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

230.    Due to Defendants' practices and policies aforesaid, Plaintiff was caused to suffer in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

231.    Furthermore, Defendants were at all times alleged herein municipal policymakers.

232.    Defendants were at all times alleged herein charged with drafting, implementing, and promulgating policies and procedures in and for the Atlantic County Jail.

233.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the active supervision of housing units and the inmates confined therein.

234.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the direct supervision of housing units and the inmates confined therein.

235.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct supervisory tours at no less than thirty (30) minute intervals.

236.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with the Prison Rape Elimination Act.

237.    Defendants failed to draft, implement, and promulgate clear and articulable policies and procedures as to the requirement to conduct inmate intakes, screenings, classifications, and housing assignments consistent with minimizing sexual victimization of inmates by other inmates.

238.    Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that housing unit officers and supervisors are to conduct supervisory tours such that these officers and supervisors were

untrained and did not know what their lawful responsibilities were in the given situation.

239.    Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with the Prison Rape Elimination Act.

240.    Defendants failed to provide adequate training and retraining to their officers and supervisory staff on policies and procedures regarding the requirement that inmate intakes, screenings, classifications, and housing assignments must be consistent with minimizing sexual victimization of inmates by other inmates.

241.    Any training provided to officers and supervisory staff by Defendants, as alleged herein, was not sufficient to meet minimum standards and was so deficient that officers and supervisory staff would not be able to articulate procedures.

242.    Defendants' widespread practice of not actively supervising their housing units and not conducting supervisory tours every thirty (30) minutes is so permanent and well-settled as to constitute an official policy, custom, or usage.

243.    Defendants' widespread practice of failing to adequately train, retrain and supervise housing unit officers is so permanent and well-settled as to constitute an official policy, custom, or usage.

244.    Had Defendants' officers and supervisory staff, including but not limited to the Jane and John Doe Defendants, been adequately trained and supervised in all matters of supervision and rounds necessary to perform their daily job duties and functions, the subject incidents would have been avoided. Thus, this long-standing failure and/or refusal to supervise and train the corrections officers and supervisory staff under its/their control, as alleged herein, is now so

institutionalized as to constitute a policy or custom of said defendants which caused or contributed to the subject incidents.

245. The failures and refusals by Defendants to hold their officers and supervisory staff accountable is a proximate cause of the injuries and abuses sustained by the plaintiff, and undoubtedly countless other inmates.

246. Through promotions and other financial and status incentives, Defendants have the power to reward officers and supervisory staff who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. Defendants' acts and omissions have created and maintained the perception that supervisors, officers and staff who turn a blind eye towards failing to inadequate supervision and sexual harassment, intimidation, abuse and rape, and fail to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

247. Defendants have previously been advised, via correspondence from the ACLU dated August 26, 2021, that housing individuals who identify as transgender according to their sex assigned at birth, rather than their gender identity, would violate the New Jersey Law Against Discrimination, particularly *N.J.S.A.* 10:5-4.

248. The foregoing ACLU correspondence evidences that Defendants knew, or should have known, that the improper housing of individuals who identify as transgender was and is a systematic problem within various New Jersey correctional facilities, including and especially the Atlantic County Jail.

249. Defendants failed to adhere to any of the warnings contained in the aforementioned ACLU correspondence, despite their actual and/or constructive knowledge that the improper housing of individuals who identify as transgender was and is a systematic problem within various New Jersey correctional facilities, including and especially the Atlantic County Jail.

250.    As a direct and proximate result of the Defendants, their agents, servants, and employees', acts, omissions, and failures, Plaintiff suffered the consequences and damages aforesaid.

251.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe physical injury pain and suffering, serious and severe psychological and emotional distress, mental anguish, shame, embarrassment, and humiliation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, declaring that Defendants' deliberate indifference and/or negligently caused Plaintiff's injuries, and providing an award of compensatory damages in an amount to be determined at trial, and an award of punitive damages in an amount to be determined at trial, all of which are individually greater than the minimum jurisdiction of this court, together with interest, fees, and costs, and such other and further relief that this Court deems just and proper.

(REMAINDER OF PAGE INTENTIONALLY BLANK)

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff respectfully requests a trial by jury on all issues so triable.

**HELD & HINES, LLP**
*Attorneys for Plaintiff*

Dated: ___*May 15, 2025*___                By:_ */s/ Carl E. Zapffe*___
                                            Carl E. Zapffe, Esq.
                                            622 Third Avenue, Suite 600
                                            New York, NY 10017
                                            212-696-4529 (Phone)
                                            czapffe@heldhines.com

                                            Brooklyn Office:
                                            4815 Avenue N
                                            Brooklyn, NY 11234
                                            718-531-9700 (Phone)
                                            718-444-5768 (Fax)

- 40 -